CHARLES DENNIS KITTS, )
 )
   Petitioner, )
 )
v. ) Nos. 2:11-CR-58-JRG-2
 )   2:14-CV-294-JRG
UNITED STATES OF AMERICA, )
 )
   Respondent. )

## <u>MEMORANDUM OPINION</u>

Before the Court is Petitioner's supplemented pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 70, 83]. The United States responded in opposition to the original § 2255 motion on December 24, 2014 [Doc. 75], and the supplement on May 3, 2016 [Doc. 96]. Petitioner filed multiple pro se replies to both responses [Docs. 76, 78, 101, 102]. Also before the Court are Petitioner's pro se motions for an evidentiary hearing [Docs. 84, 86], for the appointment of counsel [Doc. 92], to compel a response from the United States [Doc. 98], and an "informal request for disposition" [Doc. 105]. For the reasons discussed below, the non-dispositive motions [Docs. 84, 86, 92, 98, 105] will be **DENIED** and the supplemented petition [Docs. 70, 83] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

Law enforcement charged both Petitioner and co-defendant Brandon Stout with possessing a firearm as a felon [Doc. 1]. In October of 2011, Petitioner signed a plea agreement with the United States [Doc. 24], but this Court declined to accept that agreement because Petitioner kept insisting at the change of plea hearing that he did not understand the proceedings

and did not remember the underlying facts [Doc. 63]. Witnesses introduced the following facts at trial.

Jason and Brandi Lane's residence in Russellville, Tennessee, was burglarized on January 6, 2011 [Doc. 61at 3-4]. Jason Lane testified that the items stolen included jewelry, a Bible, and a Winchester shotgun that had been passed down to him by his grandfather [*Id.* at 4, 6, 8]. Detective Sergeant Statler Collins, of the Hamblen County Sheriff's Office, responded to the Lanes' residence after the burglary, and saw that someone had kicked in the front door of the residence [*Id.* at 36-7]. Later that day, Detective Collins participated in a traffic stop of a vehicle containing Petitioner, Stout, and Crystal Hyde [*Id.* at 37-8]. Stout was driving, Hyde was in the front passenger seat, and Petitioner was in the rear passenger seat [*Id.*]. During a search of the vehicle, Detective Collins found a pillowcase containing games, jewelry, and a Bible imprinted with the name of Jason Lane [*Id.* at 39]. He also found a latex glove and a black glove [*Id.* at 41-2].

Hyde agreed to speak with investigators and subsequently testified at trial [*Id.* at 42-3]. She said that she and four other individuals, including Petitioner, went to the Lanes' residence, and that Petitioner and Stout forced the front door open and went inside [*Id.* at 13-16]. Hyde testified that Stout and Petitioner returned to the car a few minutes later with "pillowcases full of stuff," and that one of the pillowcases contained a gun [*Id.* at 16-17]. The group then traveled to a "Mexican house" in Morristown, Tennessee, and Petitioner and Stout took the pillowcases of stolen items into the house [*Id.* at 19]. When they returned to the car without the pillowcases, Stout gave Petitioner $40 cash and said he had the rest in his pocket [*Id.* at 20]. Hyde took law enforcement officers to the house where Stout and Petitioner had taken the stolen items and, after obtaining consent to search, the officers recovered several of the stolen items, including the

PlayStation 3, a Wii, Wii games, DVDs, and a Winchester 410 shotgun [*Id.* at 44-45]. A firearms expert testified that the shotgun had traveled in interstate commerce [*Id.* at 58].

Based in part on the foregoing testimony, on December 8, 2011, the jury convicted Petitioner of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) [Doc. 40]. Based on five prior Tennessee convictions—three for second-degree burglary [Presentence Investigation Report (PSR) ¶¶ 28, 31], and two for aggravated burglary [*Id.* ¶¶ 36, 42], the United States Probation Office deemed Petitioner to be an armed career criminal subject to the Armed Career Criminal Act's (ACCA), 18 U.S.C. § 924(e), fifteen year statutory minimum [*Id.* ¶ 22]. Because of that classification and because the firearm was possessed "in connection with" another violent felony, he received a base offense level of thirty-four [*Id.*]. Petitioner's fifteen criminal history points and criminal history category of VI yielded an advisory Guidelines range of 262 to 327 months [*Id.* ¶¶ 53-54, 87]. Neither party objected [Doc. 49; Doc. 50; Doc. 64 at 5].

Citing Petitioner's extensive criminal history, the United States requested a sentence of 327 months' imprisonment [Doc. 64 pp. 5-6]. Petitioner suggested that a below-Guidelines sentence might be appropriate [Doc. 53]. This Court referenced the seriousness of the instant offense, as well as Petitioner's lengthy and violent criminal history, in that Petitioner, while still a teenager, had seemingly "committed [him]self to a life of lack of respect for the law" [*Id.* at 15-16]. Addressing the need to promote respect for the law, this Court stated, "the only time that it appears that [Petitioner was] not committing criminal offenses are periods of time when [he was] in jail for some other offense" [Doc. 64 p. 16]. Based on the number and type of offenses committed, as well as Petitioner's repeated violations of probation or other terms of release, this

Court concluded that it would take a "substantial term of imprisonment to deter [Petitioner] from committing criminal offenses" [*Id.* at 17-18].

Turning to the need to protect the public, this Court stated that Petitioner's repeated burglaries involving firearms substantially increased the likelihood that death or serious bodily injury could occur during his offenses, and "yet [Petitioner had] been doing that for years [and did not] seem to have been deterred from it at all" [*Id.* at 19]. This Court acknowledged that Petitioner's criminal behavior was related to his alcoholism but found that the risk of recidivism was high [*Id.* at 19-20]. "[S]tatistics suggest that the people who are most likely to commit additional offenses in the future are the people who are convicted of property-related offenses, something in excess of 75 percent. So the chances are very high that you will continue to commit these offenses, and the public has an obvious right to be protected from that" [*Id.*]. This Court said it saw nothing that would warrant a downward variance from the Guidelines range [*Id.* at 20]. Although Petitioner's history and characteristics were significant, it was "not because there's anything here to suggest mitigation, but because of Petitioner's significant criminal history, including a whole host of violent offenses, 15 total criminal history points. Mental health issues, addiction issues, both of which increase the risk of recidivism" [*Id.*]. This Court added that it did not "see anything that would suggest . . . a sentence below the guideline range" [*Id.* at 20-21].

Based on the foregoing, this Court rejected Petitioner's suggestion that his health problems—he claimed to be dying of liver disease—warranted a lesser sentence [*Id.* at 21]. To the contrary, this Court reasoned that Petitioner would likely be better off, from "a medical point of view," if he were in custody "where [he could not] drink alcohol the way [he had] in the past and . . . [could] get appropriate medical treatment" instead [*Id.*]. After reiterating that

Petitioner's medical condition did not warrant a variance, [*id.* at 22], this Court imposed a bottom-of-the-Guidelines sentence: 262 months' imprisonment [*Id.* at 22-23; Doc. 56]. Petitioner appealed, but the Sixth Circuit affirmed his conviction, ACCA enhancement, and sentence [Doc. 67]. The Supreme Court denied Petitioner's request for a writ of certiorari on April 1, 2014 [Doc. 69].

Less than one year later—on September 25, 2014, Petitioner filed his original petition for collateral relief asserting several grounds of legal error and ineffective assistance of counsel [Doc. 70]. On June 26, 2015, the Supreme Court held that the residual provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Nearly two years after submitting the original petition, but less than one year after the Supreme Court decided *Johnson*—February 22, 2016, Petitioner filed a supplement with six discernable grounds for collateral relief: (1) he no longer qualified for ACCA enhancement after *Johnson*, (2) the use of prior state court convictions to enhance his sentence violated *Alleyne v. United Sates*, 133 S. Ct. 420 (2012); (3) counsel acted in a constitutionally deficient manner when he failed to seek a competency hearing, (4) counsel acted in a constitutionally deficient manner when he "bias[ed] his own client in front of the jury;" (5) counsel acted in a constitutionally deficient manner when he failed to "adversarially test" the United States's key witness, and (6) the United States intentionally "confused" the jury [Doc. 83].

## II.    REQUEST FOR THE APPOINTMENT OF COUNSEL

In addition to the supplemented petition, this Court is in possession of a pro se motion requesting the appointment of counsel to assist Petitioner with litigation of his collateral challenge, especially his ground for relief based on *Johnson* [Doc. 92]. To the extent that he

seeks counsel to assist in litigation of his *Johnson*-based challenge, that request will be **DENIED as moot** in light of the fact that this Court already appointed Federal Defenders Services of Eastern Tennessee (FDSET) by Standing Order to identify and represent all defendants in the Eastern District of Tennessee with a viable argument for collateral relief based on *Johnson*. E.D. Tenn. S.O. 16-02 (Feb. 11, 2016). To the extent that he requests counsel to aid in litigation of his other grounds for collateral relief, that request will be **DENIED** because Petitioner has not demonstrated that counsel is necessary to ensure that those claims are fairly raised or heard. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986); *see also Childs v. Pellegrin*, 822 F.2d 1382, 1284 (6th Cir. 1987) (explaining that the appointment of counsel in a civil case is a matter within the discretion of the district court).

## III.    TIMELINESS AND RELATION BACK OF CLAIMS

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). This same provision governs the timeliness of later-filed amendments. *Cameron v. United States*, No. 1:05-cv-264, 2012 WL 1150490, at *3–6 (E.D. Tenn. April 5, 2012) (citing *Olsen v. United States*, 27 F. App'x 566 (6th Cir. Dec. 14, 2001)). Petitioner has failed to demonstrate that subsections (f)(2) or (f)(4) apply to

his case. Specifically, he has not established that any illegal action by the government prevented him from making the timely petition or the existence of facts affecting his case that could not have previously been discovered through the exercise of due diligence. Timeliness of his supplement depends on whether that document complies with the limitation periods under subsections (f)(1) and (f)(3).

### A. Timeliness of September 25, 2014 Petition

For purposes of the subsection (f)(1)—where the statutory period expires one year from the date on which the judgment of conviction becomes final—"a conviction becomes final at the conclusion of direct review." *Brown v. United States*, 20 F. App'x 373, 374 (6th Cir. 2001) (quoting *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001)). Where a defendant pursues direct review through to a petition for certiorari in the United States Supreme Court, direct review concludes when the Supreme Court either denies the petition for certiorari or decides the case. *Clay v. United States*, 537 U.S. 522, 532 (2003). Petitioner's conviction became final for purposes of subsection (f)(1) on April 1, 2014 [Doc. 69]. The statute of limitations for the provision began to run that same date and expired on April 1, 2015. The original petition—filed on September 25, 2014—falls safely within the permissible period for requesting collateral relief [Doc. 70].

### B. Timeliness of February 22, 2016 Amendment

Unlike the original petition, Petitioner filed the supplement to his petition almost eleven months after the window for requesting relief under subsection (f)(1) expired. To the extent that Petitioner relies on subsection (f)(3)'s independent filing period for newly-recognized rights made retroactively applicable on collateral review as justification for submitting the supplement after April 1, 2015, only his claim for collateral relief based on *Johnson* satisfies the conditions

required to trigger that provision. *See* 28 U.S.C. § 2255(f)(3) (requiring reliance on a newly recognized and retroactively applicable right); *see also Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) ("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition).[1] The fate of Petitioner's other supplemental grounds for relief—his *Alleyne*, ineffective assistance, and prosecutorial misconduct claims—depend on whether the filing window under subsection (f)(1) has been equitably tolled and, if not, whether those untimely grounds relate back to one of Petitioner's timely-filed grounds under Federal Rule of Civil Procedure 15(c).

### 1. Equitable Tolling of the Statute of Limitations

Section 2255(f)'s statute of limitations is not jurisdictional and may be tolled under limited circumstances. *Dunlap v. United States*, 250 F.3d 101, 1007 (6lth Cir. 2001). A petitioner bears the burden of establishing that equitable tolling applies to his case, *see Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), and must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010); *Hail v. Warden*, 662 F.3d 745, 750 (6th Cir. 2011); *see also Jurado*, 337 F.3d at

---

[1] The Sixth Circuit has repeatedly held that *Alleyne*—which the Supreme Court decided around two years after Petitioner received his sentence, does not apply retroactively on collateral review. *See In Re Mazzio*, 756 F.3d 487, 488 (6th Cir. 2014) ("[A]ny new rule announced in *Alleyne* has not been made retroactive to cases on collateral review by the Supreme Court."). Absent retroactivity, the case cannot trigger a renewed period under subsection (f)(3).

643 ("Absent compelling equitable considerations, a court should not extend limitations by even a single day.").

After a thorough review of the petition, supplement, replies, and other pro se filings, this Court finds that Petitioner has failed to put forth a single, extraordinary circumstance justifying his failure to submit the supplement within the one-year period allowed by subsection (f)(1). *Compare Stovall v. United States*, No. 1:12-cv-377, 2013 WL 392467, at *3 (E.D.T.N. Jan. 31, 2013) (rejecting request for equitable tolling of subsection (f)(1) in absence of evidence illustrating a diligent pursuit of the rights asserted); *with Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012) (granting request for equitable tolling where the petitioner pled facts indicating he had been separated from his legal materials for an extended period of time due to multiple detention transfers and an illness). Absent such a showing, no tolling is warranted.

### 2. Relation Back Under Federal Rule of Civil Procedure 15(c)

When a supplement is untimely, district courts look to Rule 15(c) to determine whether the proposed claims "relate back" to a timely, original pleading and are thus saved from being time barred by expiration of the statute of limitations. *Mayle v. Felix*, 545 U.S. 644, 656–57 (2005), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007). A claim relates back if it "ar[i]se[s] out of the [same] conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Supreme Court rejected a broad reading of "conduct, transaction, or occurrence" in the context of post-conviction relief and explained an amended petition will not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those [in] the original pleading." *Felix*, 545 U.S. at 650. In other words, "relation back depends on the

existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 658 (citations omitted).

Here, not a single one of the untimely grounds for relief contained in Petitioner's February 22, 2016 supplement share a "core of operative fact" with a timely claim from his original petition. Because these grounds are neither timely nor relate back to a timely ground, they will be dismissed.

## IV. RESOLUTION OF TIMELY GROUNDS FOR COLLATERAL RELIEF

### A. Standard of Review

To obtain relief under 28 U.S.C. § 2255, Petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

### B. Analysis

As supplemented, the petition contains seven timely grounds for relief: the first two grounds allege legal error: this Court improperly instructed the jury about the *mens rea* required to convict an individual under § 922(g) (Ground One) [Doc. 70 at 4; Doc. 71 at 2–6], and improperly categorized Petitioner as an armed career criminal in light of *Johnson* (Ground Two) [Doc. 83 at 4–10]. The last five grounds involve allegations of ineffective assistance. Specifically, Petitioner claims that counsel performed in a constitutionally deficient manner by:

not objecting to portions of Corporal Hinkle's testimony as unfairly prejudicial (Ground Three) [Doc. 70 at 5; Doc. 71 at 6–7]; not seeking a duel instruction based on the fact that Corporal Hinkle testified as an "expert witness in lay person clothing" (Ground Four) [Doc. 70 at 5; Doc. 71 at 9–13]; not objecting to application of Section 2K2.1(b)(6)(B) and the resulting four point base offense level enhancement (Ground Five) [Doc. 70 at 5; Doc. 71 at 14–18]; not objecting to Petitioner's base offense level of thirty-four under Section 4B1.4(b)(3)(A) [Doc. 70 at 5; Doc. 71 at 19–24]; and "failing to gather records, interview family members, or otherwise investigate movant's background for potential mitigating evidence" [Doc. 70 at 5; Doc. 71 at 24–27].

### 1.    Grounds One and Two: Error by the Court

As an initial matter, Petitioner procedurally defaulted Ground One because he could have raised that challenge on direct appeal, but did not. *United States v. Calderon*, 194 F.3d 1314 (6th Cir. 1999) (noting "direct appeal would have been the correct form in which to raise sentencing questions"); *Turner v. United States*, 191 F.3d 453 (6th Cir. 1999) (explaining that "a motion to vacate under § 2255 does not serve as a substitute for bringing a direct criminal appeal").

"In the case where the defendant has failed to assert his claim[] on direct appeal and thus has procedurally defaulted, in order to raise [that claim] in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise [the argument] and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *accord United States v. Frady*, 456 U.S. 152, 167-68 (1982). The "hurdle" that a petitioner faces to excuse procedural default is "intentionally high[,] . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner has not alleged his actual innocence, nor has he put forth any good cause for his failure to challenge

his conviction on direct appeal [*See generally* Docs. 70, 71, 76, 78, 83, 101, 102].  Even if he had established good cause, he cannot show that an inability to raise Ground One would result in prejudice.

### i.    Ground One:  Improper Legal Instruction

Petitioner argues that this Court erred when it instructed the jury that they needed to find that he acted "knowingly" to return a guilty verdict because they also could have convicted him for possessing the firearm "accidentally or by mistake."  Because this Court denied the jury an opportunity to make that finding, Petitioner seeks vacatur of the conviction.  The claim lacks merit.

Among others, this Court provided the following instruction to jurors:

Whether the government has proven beyond a reasonable doubt the second and third elements of the crime charged in the indictment; that is, that the defendant, Charles Dennis Kitts, following his conviction knowingly possessed the firearm specified in the indictment.

. . .

The term "knowingly" means voluntarily and intentionally and not because of accident or mistake.

[Doc. 62 p. 30].[2]  This instruction tracks the language of the pattern instructions for § 922(g)(1) offenses, *see* Sixth Circuit Pattern Jury Instruction 12.01, and "properly reflect[s] the law of the Sixth Circuit," *United States v. Holloway*, 257 F. App'x 869, 873 (6th Cir. 2007); *see also United States v. Davis*, 27 F. App'x 592, 600 (6th Cir. 2001) (explaining that convictions under § 922(g)(1) require that the "defendant know that he is in the possession of a firearm after being

---

[2]    Because the parties stipulated that Petitioner was a convicted felon, this Court instructed the jury that the United States must prove the remaining elements beyond a reasonable doubt.

convicted of the requisite offense" (citing *United States v. Beavers*, 206 F.3d 706, 710 (6th Cir. 2000). Because this Court gave the proper legal instruction, no collateral relief is warranted.

To the extent that Petitioner claims he was convicted under § 924(e) instead of § 922(g)(1), he is mistaken. The ACCA is a penalty provision for individuals who "violate[] [§] 922(g) . . . and ha[ve] three previous convictions" for a violent felony or serious drug offense. Enhancement under § 924(e) does not alter the mental state required for a conviction under § 922(g)(1).

### ii.     Ground Two: Career Offender Designation After *Johnson*

Next, Petitioner argues that *Johnson* removed his three convictions for second-degree burglary and two convictions for aggravated burglary from § 924(e)'s definition of "violent felony" and that he lacks the predicates for enhancement without those convictions.[3]

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). It defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is

---

[3]     Tennessee revised its burglary statutes on November 1, 1989, as part of the State's comprehensive criminal code revision. *See, e.g.*, *State v. Langford*, 994 S.W. 2d 126, 127–28 (Tenn. 1999). The pre-1989 version of the Tennessee Code criminalized six types of burglary offenses: (1) first-degree burglary, Tenn. Code Ann. § 39-3-401 (1982); (2) breaking after entry, Tenn. Code Ann. § 39-3-402 (1982); (3) second-degree burglary, Tenn. Code Ann. § 39-3-403 (1982); (4) third-degree burglary, Tenn. Code Ann. § 39-3-404(a)(1) (1982); (5) safecracking, Tenn. Code Ann. § 39-3-404(b)(1) (1982); and (6) breaking into vehicles, Tenn. Code Ann. § 39-3-406 (1982). Tennessee law now prohibits only three types of burglary: (1) burglary, Tenn. Code Ann. § 39-14-402 (2016); (2) aggravated burglary, Tenn. Code Ann. § 39-14-403 (2016); and (3) especially aggravated burglary, Tenn. Code Ann. § 39-14-404 (2016).

burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause");
or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to
another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above
definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court
in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did
not call into question the remainder of the ACCA's definition of violent felony—the use-of-
physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–
83 (6th Cir. 2015).

Thus, the validity of Petitioner's sentence depends on whether three or more of his prior
convictions qualify as "serious drug offenses" under § 924(e)(2)(A) or, in alternative, "violent
felonies" under one of the unaffected provisions of § 924(e)(2)(B). *See, e.g.*, *United States v.
Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where conviction qualified as a
predicate offense independent of the residual clause), *overruled on other grounds by Mathis v.
United States*, 136 S. Ct. 2243, 2251 n. 1 (2016). To determine whether an offense qualifies
under one of the above provisions, courts must first identify the precise crime of conviction by
employing a "categorical approach," looking "only to the statutory definitions—elements—of a
prior offense, and not to the particular facts underlying [each individual] conviction[]."
*Descamps v. United States*, 133 S. Ct. 2276, 2283, 2285 (2013). Because this Court finds that all
three of Petitioner's prior second-degree burglary convictions remain predicate offenses under
the enumerated-offense clause, i.e., independent of the now-defunct residual clause, he is not
entitled to collateral relief.

For purposes of § 924(e), the Supreme Court defines "burglary" as any conviction,
"regardless of its exact definition or label, having the basic elements of unlawful or unprivileged

entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). At the time that Petitioner committed the second-degree burglaries, Tennessee defined that crime as the breaking and entering into a dwelling house or any house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging by day, with intent to commit a felony. Tenn. Code Ann. § 39-903; Tenn. Code Anno. § 39-3-403. This definition categorically aligns with *Taylor*'s definition, meaning this Court did not err when it categorized the burglaries as violent felonies under the ACCA enumerated-offense clause. *See United States v. Jones*, 673 F.3d 497, 505 (6th Cir. 2012) (holding that pre-1989 Tennessee second-degree burglary qualifies as generic burglary, i.e., a violent felony under the enumerated-offense clause).[4]

Because Petitioner retains at least three prior violent felonies, this Court declines to address the status of his prior aggravated burglary convictions after *Johnson* and *Mathis*.

### 2. Remaining Grounds for Relief: Ineffective Assistance of Counsel

In addition to the foregoing allegations of legal error, Petitioner asserts five theories of ineffective assistance and deficient performance against trial counsel James Bell.

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by

---

[4]     In *Mathis v. United States*, 136 S. Ct. 2246 (2016), the Supreme Court held that a prior conviction cannot qualify as a generic form of a predicate violent felony if a locational element of that crime is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former. Unlike the Iowa statute at issue in *Mathis*, however, the Tennessee statute at issue here does not contain any "alternate ways of satisfying a single locational element" that fall outside of the generic definition. Rather, the phrase "dwelling house or any house, building, room or rooms therein" categorically aligns with generic burglary's elemental requirement that the breaking or entering be of a "building or structure." As a result, *Mathis* has no impact on this Court's ability to categorize Tennessee second-degree burglary as a violent felony under the enumerated-offense clause.

identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the court need not decide whether counsel's performance was deficient.

### i.    Grounds Three and Four: Corporal Hinkle

In his third and fourth grounds for relief, Petitioner argues that counsel rendered deficient assistance by failing to: (1) object to Corporal Hinkle's testimony as unfairly prejudicial and (2) seek a special dual purpose instruction based on what he characterizes as Corporal Hinkle testifying as an "expert witness in lay person clothing." Neither allegation merits relief.

With regard to the former, Petitioner complains that the witness tasked by the United States with establishing the interstate nexus of the recovered firearm—Corporal Hinkle—testified that his duties included work as the Project Safe Neighborhoods (PSN) Officer for the Morristown Police Department and characterized the PSN program as a strategy to "take violent

offenders who commit gun crimes and identify them as such and bring them into federal court where they'll be tried accordingly." According to Petitioner, that testimony improperly prejudiced the jury because it caused them to believe that Petitioner was one of those "violent offenders." He argues that counsel should have challenged the relevance and prejudicial impact of testimony about Corporal Hinkle's rank, duties with the Morristown Police Department, prior law enforcement experience, work as an ATF Task Force Officer, and 30 years working as a gunsmith [Doc. 61 at 54–56].

This Court disagrees. The introductory portion of Corporal Hinkle's testimony was relevant because it helped to establish his expertise in the identification of firearms and determination of a firearm's interstate nexus. The necessity of that background information is highlighted by this Court's instruction that the jury should "consider [Corporal] Hinkle's qualifications and how he reached his conclusions" when weighting his testimony [Doc. 62 at 62]. Further, because Corporal Hinkle limited the discussion to his own background and qualifications without ever insinuating that Petitioner was a violent offender [Doc. 61 at 54–61], it cannot be viewed as unfairly prejudicial. Counsel was not ineffective for choosing not to make an objection that would have been overruled. *See, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held ineffective for failing to raise a meritless objection).

With regard to the latter, Petitioner claims that counsel erred when he failed to object to the absence of a cautionary dual role jury instruction. Specifically, he asserts that Corporal Hinkle testified as both a fact witness and expert witness and that the absence of a special instruction bringing that fact to the jury's attention resulted in significant prejudice.

17

While it is true that a dual-role instruction is appropriate where an agent testifies as both a fact and expert witness, *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009), Corporal Hinkle did not testify in a dual role. The sole purpose of Corporal Hinkle's testimony was to establish the interstate nexus element of the offense, and his testimony was limited to his qualifications, analysis and determination of the interstate nexus of the subject firearm [Doc. 61 at 54–61]. Because he did not testify as a fact witness, a dual role instruction would have been inappropriate. No dual role instruction was required and counsel was correct not to seek one.

### ii. Grounds Five and Six: Improper Guidelines Calculation

Petitioner argues that counsel should have objected to two aspects of his Guidelines calculation: (1) the four point increase in base offense level under Section 2K2.1(b)(6)(B); and (2) the base offense level of thirty-four under Section 4B1.4(b)(3)(A). Petitioner suggests that a successful objection to either would have resulted in a shorter sentence.

As an initial matter, it is irrelevant whether or not the Court properly applied Section 2K2.1(b)(6)(B) because the enhanced base offense level that resulted from that application was preempted by the base offense level of thirty-four under Section 4B1.4(b)(3)(A).

Further, this Court properly applied the base offense level of thirty-four under Section 4B1.4(b)(3)(A)—as opposed to the base offense level of thirty-three under Section 4B1.4(b)(3)(B)—because Petitioner possessed the firearm during a crime of violence, i.e., burglary of the Lane residence. To the extent that Petitioner argues that he cannot be subjected to the higher base offense level under Section 4B1.4(b)(3)(A) because his possession of the firearm arose from the same conduct as the crime of violence, he is mistaken. A*ccord United States v. Guerro*, 5 F.3d 868, 873 (5th Cir. 1993) (explaining that "possess[ing] the firearm . . . in connection with a crime of violence" under Section 4B1.4(b)(3)(A) "merely reflects the context

of the defendant's possession of the firearms" and applying the base offense level of thirty-four from that provision where the defendant possessed the firearm during a burglary); *see also United States v. Mann*, 440 F. App'x 558 (9th Cir. 2011) (upholding application of Section 4B1.4(b)(3)(A) where a firearm was possessed in connection with a burglary); *United States v. Rippee*, 309 F. App'x 81 (8th Cir. 2009) (same); *United States v. Smiley*, 263 F. App'x 765 (11th Cir. 2008) (same); *United States v. Slusarczyk*, 141 F. App'x 108 (4th Cir. 2005) (same).

In support of his challenge, Petitioner references the similarity of language between Sections 2K2.1(b)(6) and 4B1.4(b)(3)(A) as well as *United States v. Sanders*, 162 F.3d 396 (6th Cir. 1998), in which the Sixth Circuit held that the Guidelines term "another felony offense" required "a separation of time . . . or a distinction of conduct" between the offense of conviction and the other felony, *id.* at 400.[5]  This argument overlooks the fact that the Sentencing Commission revised the relevant commentary in Section 2K2.1 when it promulgated Amendment 691 in November of 2006.  Amendment 691 clarified that the enhancement should apply when, "during the course of a burglary, [a defendant] finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary."  USSG § 2K2.1(b)(6), cmt. n. 14(b).   Any reliance on *Sanders* to show a contrary interpretation of the Guidelines is misplaced because, to the extent that *Sanders* differs from the Guidelines commentary, Amendment 691 overruled it.  *Stinson v. United States*, 508 U.S. 36, 38 (1993).[6]

---

[5]     *Sanders* actually involved Section 2K2.1(b)(5), but that provision is codified as Section 2K2.1(b)(6) in the current version of the Guidelines.

[6]     To the extent that Petitioner relies on *United States v. Kilgore*, 749 F.3d 463 (6th Cir. 2014), as proof that *Sanders* remains good law and applies to his case [Doc. 78], he is mistaken. Unlike the instant case, the firearms at issue in *Kilgore* were not obtained during a burglary and thus did not fall within the scope of conduct addressed by Amendment 691 and comment 14(b).

For reasons previously discussed, Petitioner was and remains properly classified as an armed career criminal under § 924(e). Section 4B1.4(b)(3)(A) was properly applied because he possessed the firearm—violated § 922(g)(1)—during a crime of violence—the burglary.

Because there was no error in calculating Petitioner's base offense level or the application of Section 4B1.4(b)(3)(A), counsel did not render ineffective assistance by choosing not to object.

### iii. Ground Seven: Failure to Investigate

In his seventh and final ground for collateral relief, Petitioner faults counsel for "failing to gather records, interview family members, or otherwise investigate movant's background for potential mitigating evidence." As support, he references the failed plea colloquy in which counsel indicated that he had retained an investigator and was in the process of gathering records.[7]

To the extent that Petitioner suggests that counsel failed to adequately investigate or obtain records concerning Petitioner's mental health, the record contradicts that claim. Petitioner's medical records and history were summarized in the United States Probation Office's PSR and considered by this Court when calculating the appropriate sentence. Because the information was presented to and evaluated during the course of Petitioner's criminal proceeding, he has not shown that he incurred prejudice as a result of the omission alleged. Absent prejudice, the claim fails.

To the extent that Petitioner faults counsel for not finding and presenting other unspecified mitigating evidence, that claim is too underdeveloped for this Court to review. *See*

---

[7] Petitioner references this transcript as the "Sentencing Transcript," but referenced portions make clear that he is actually quoting the Change of Plea Transcript [Doc. 63].

*United States v. Roach*, 502 F.3d 425, 442 (6th Cir. 2007) (deeming undeveloped claims unreviewable); *O'Mallley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of veracity, are not sufficient to warrant a hearing."); s*ee also Hall v. United States*, No. 3:05-cr-36-TAV, 2015 WL 3994834, at *4 (E.D. Tenn. July 1, 2015) ("Petitioner has the burden to establish that he is entitled to relief. . . . The Court cannot evaluate a claim that consists of little more than a single conclusory sentence. The claim must be rejected because it has not been adequately developed, and therefore, is not reviewable.").

## IV.    REQUESTS FOR AN EVIDENTIARY HEARING

Under Rule 8 of the rules governing § 2255 proceedings in United States District Courts (the "§ 2255 Rules"), courts must determine, based on a review of the answer and the record, whether an evidentiary hearing is required.  *Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015) (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)).  The burden to show an entitlement to an evidentiary hearing is relatively light, but must offer more than mere assertions of innocence.  *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).  For example, a petitioner is entitled to an evidentiary hearing where he presents "a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the Government offers nothing more than contrary representations to contradict it."  *Huff*, 734 F.3d at 707 (quoting *Valentine*, 488 F.3d at 334); *see also Pola*, 778 F.3d at 534 (noting an evidentiary hearing would be required where affidavits directly contradicted each other regarding whether Petitioner had requested counsel to file a notice of appeal).  An evidentiary hearing is not required where the record

conclusively shows a petitioner is entitled to no relief. *Huff*, 734 F.3d at 607 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Petitioner has not identified any material factual dispute requiring resolution by way of an evidentiary hearing. Further, for reasons discussed in the preceding sections, the Court finds that the undisputed record conclusively precludes collateral relief. As a result, both of Petitioner's pro se motions for an evidentiary hearing [Docs. 84, 86] will be **DENIED**.

## V.     MOTIONS TO COMPEL AND FOR DISPOSITION

This Court is also in possession of pro se motions to compel [Doc. 98] and for "disposition" [Doc. 105]. In the former motion, Petitioner asks that this Court order the United States to comply with the briefing schedule established on April 22, 2016 [Doc. 95]. Review of the CM/ECF docket sheet reveals that the referenced Order set a response deadline of May 5, 2016, and that the United States complied with that requirement by filing its response on May 3, 2016 [Doc. 96]. This Court interprets the latter motion as a request for expedited ruling on the grounds for relief asserted in Petitioner's supplemented petition. Both pro se motions will be **DENIED as moot**.

## VI.     CONCLUSION

For the reasons discussed, Petitioner's requests for an evidentiary hearing and the appointment of counsel [Docs. 84, 86, 92] will be **DENIED** and Petitioner's supplemented pro se § 2255 motion [Docs. 70, 83] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The pro se motions for an Order compelling the United States to respond and for "disposition" [Docs. 98, 105] will be **DENIED as moot**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal

Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; of the Fed. R. of App. P. 22(b).

**AN APPROPRIATE ORDER WILL ENTER.**

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
